# EXHIBIT A

FILED
IN COMBINED COURT
LA PLATA COUNTY, COLORADO

JAN 31 2023

DATE FILED: January 31, 2023
CASE NUMBER: 2023CV2003
DEPUTY CLERK

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

23 CV 2003

Div: 4

NORMAN ELIZONDO,

     Plaintiff,

vs.

ACF ENTERPRISES, LLC d/b/a OPEN SKY WILDERNESS THERAPY,
a Colorado limited liability corporation, and

AARON FERNANDES, an individual,

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

### INTRODUCTION

1. Plaintiff Norman Elizondo ("Elizondo"), an Asian American, worked for Defendant ("Open Sky") from 2006 to 2020. Aaron Fernandes ("Fernandes") is the majority owner of Open Sky.  Elizondo is a 3% shareholder of Open Sky as indicated in K1 Statements issued for his tax returns. **(See 2019 K1, Ex. 1).**

2. On or about September 8, 2020, following the many murders of Black and Brown people including Asian Americans, Fernandes accused Elizondo as ongoing having "rage issues" since March 2020. Fernandes confronted Elizondo about his Buddhist religion and practice, calling it a "cult" based on an unvetted internet post about Elizondo's religious teacher. From the internet post, Fernandes believed Elizondo's teacher, working at Dharma Ocean, was abusive to his practitioners.

Fernandes insisted Elizondo was "implicated" in the alleged abuse, despite Elizondo was not named. Fernandes further expressed Elizondo's "samaya" (oath to serve his teacher) was problematic to Fernandes and Open Sky. Specifically, Fernandes claimed Elizondo's teacher would manipulate Elizondo to damage or destroy Open Sky.

3. Based upon the internet posting, Fernandes required Elizondo to obtain significant mental health therapy, despite Fernandes' lack of credentials to make a mental health assessment, thereby regarding Elizondo as disabled, placing him on a sabbatical.

4. After Elizondo obtained the mental health therapy, on November 25, 2020, Fernandes fired Elizondo indicating he still had rage issues, again insisting Elizondo's samaya oath to his teacher was problematic to Fernandes and Open Sky. A Separation Agreement was given to Elizondo to consider the same day.

5. After firing Elizondo, Open Sky and Fernandes failed to pay Elizondo's 2020 annual profit sharing of his 3% Open Sky ownership interest.

6. In 2020 and 2022 Open Sky attempted to convince Elizondo to accept a buy-out of his Open Sky ownership interest under unconscionable and inequitable terms.

7. To challenge this conduct, Elizondo brings this action against Open Sky and Fernandes individually, to recover damages and penalties pursuant to the provisions of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 to 2000e-17 as amended for religious discrimination, the Americans With Disabilities Act as Amended, 42 U.S.C § 12101, *et seq.* and for claims of breach of contract, conversion of Elizondo's Open Sky ownership interest, for civil theft pursuant to C.R.S. §18-4-401 and the Rights

to Stolen Property Statute C.R.S. §18-4-405 and failure to engage in good faith and fair dealing.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. §1331 by virtue of federal questions.

9. This Court has supplemental jurisdiction over Elizondo's Colorado state claims pursuant to 28 U.S.C. §1367.

10. Venue lies with this Court pursuant to 28 U.S.C. §1391(b) and 29 U.S.C. §201 *et seq*. All events giving rise to this litigation occurred in Colorado, where Open Sky and Fernandes reside.

## PARTIES

11. Elizondo is an individual who resides in Durango, CO.

12. Open Sky is a Colorado limited liability corporation with its principal place of business located at 1970 E. 3rd Avenue, Ste. #205, Durango, CO 81301.

13. Fernandes is an individual who resides in Durango, CO 81301. He is the majority shareholder of Open Sky, with approximately an 81% ownership.

14. At all times material to this action, Open Sky was an employer in an industry affecting commerce having 15 or more employees for 20 or more weeks per year.

15. At all times material to this action, Elizondo was an Open Sky employee until he was fired on or about November 25, 2020.

### FIRST CLAIM FOR RELIEF
### (Open Sky's Title VII Religious Discrimination)

16. Elizondo incorporates by reference each allegation stated above.

17. At all times material to this action, Elizondo was, and currently is, a practicing Buddhist.

18. At all times material to this action, Fernandes identified as an atheist.

19. At all times material to this action, Elizondo performed satisfactorily when employed by Open Sky, as evidenced by his long tenure, Open Sky Facebook positive reviews, numerous client accolades, and a complete absence of any disciplinary action within his personnel file.

20. Open Sky's comments in September and November 2020 that Elizondo's Buddhist teacher was a "cult" and Elizondo's samaya oath to his teacher was "problematic" because he would be manipulated by his teacher to "destroy Open Sky" demonstrated a religious animus against Elizondo's Buddhist religion.

21. Open Sky fired Elizondo on or about November 25, 2020.

22. Elizondo's religion was a motivating cause why Open Sky fired Elizondo.

23. Upon information and belief, while employed by Open Sky, Elizondo was the only openly Buddhist practitioner, particularly under the teachings of Dharma Ocean, and he was the only employee discriminated against because of his religion.

24. Upon information and belief, all other Open Sky employees employed during the same time frame as Elizondo who were Christian, agnostic or atheist were not fired for their religious beliefs.

25. Elizondo was harmed by Defendants by being discriminated against because of his Buddhist religion beliefs deemed to be "problematic, a "cult" which could destroy Open Sky.

4

26. Prior to filing this lawsuit, on May 18, 2021, Elizondo timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of being fired, alleging religious, disability and race discrimination. **(Ex. 2).**

27. On September 29, 2022, at Elizondo's request, the EEOC issued its Right to Sue letter when more than 180 days passed from Elizondo's Charge without a determination. **(Ex. 3).**

### SECOND CLAIM FOR RELIEF
### (Open Sky's Disability Discrimination)

28. Elizondo incorporates by reference each allegation stated above.

29. Open Sky indicated it regarded Elizondo to have "rage issues" as an ongoing mental health impairment beginning in March 2020 (during COVID and nationwide racial unrest), because he swore and expressed frustration.

30. On or about September 11, 2020, Open Sky placed Elizondo on an 8-week paid sabbatical (later extended to November 25, 2020) with the following requirements:

-actively engage in therapy with a licensed, Master's or PhD level clinician with expertise in anger management;

-16 sessions (average 2 sessions/week, 60 to 90 minutes in length);

-provide therapist with life context information, including employment as a Family Wellness Counselor at Open Sky (2006-2020); work/study and Senior Student at Dharma Ocean (2005-2020); The "Open Letter, "No Secrets in the Village" (October 7, 2019) (the internet posting); and

-other restrictions including no work to "unplug and focus on self-care, personal work and rejuvenation." **(Ex. 4)**

5

31. Open Sky's mandatory therapy requirements indicated it regarded Elizondo to have an ongoing mental impairment.

32. Open Sky's mental health therapy requirements indicated Elizondo's perceived mental impairment since March 2020 was neither minor nor transitory.

33. On or about November 25, 2020, Open Sky fired Elizondo due to its perception of Elizondo's as having an ongoing mental health impairment for the past nine months, thus regarding him as disabled.

34. Upon information and belief, all other Open Sky employees besides Elizondo employed during the same time frame who swore or demonstrated frustration or anger were not alleged to have "rage issues," were not required to obtain mental health therapy, nor were they fired for their conduct. Accordingly, Elizondo was treated differently than other Open Sky employees.

35. Elizondo was harmed by being discriminated against by Open Sky because it regarded Elizondo as having a significant mental impairment.

### THIRD CLAIM FOR RELIEF
### (Open Sky's Breach of Contract)

36. Elizondo incorporates by reference each allegation stated above.

37. By virtue of the K1 statements evidencing Elizondo's ownership interest in Open Sky, Open Sky entered into a contract to continue paying Elizondo's annual profit sharing shortly after the end of each calendar year.

38. Open Sky breached the contract by not paying Elizondo's 2020, and 2021 profit sharing shortly after the end of both calendar years.

39. Elizondo was harmed by Open Sky's failure to timely pay his 2020 and 2021 profit sharing.

### FOURTH CLAIM FOR RELIEF
### (Open Sky and Fernandes - Civil Theft/Conversion/Rights of Stolen Property)

40. Elizondo incorporates by reference each allegation stated above.

41. Defendants attempted to permanently deprive Elizondo of his ownership interest in Open Sky by:

A. First, on or about November 25, 2020, pressuring Elizondo to accept a "Separation Agreement" **(Ex. 5)**. providing: "In exchange for Employee's services, Employee was assigned ownership of approximately 3% of the Company's profits interest. ("Interest.") . . . The Interest Agreements, and the Company's Operating Agreement provide . . . the Interest . . .cannot be maintained once an employee is no longer employed by the Company, and the Interest is **forfeited in its entirety** and without payment **if Employee is terminated for "cause."** (Emphasis added). (Id.) Upon information and belief, Elizondo signed no Operating Agreement, no Equity Agreement, nor any Interest Award Agreement. Moreover, by the claim to Elizondo forfeited his ownership interest if he was "terminated for cause" admits Elizondo was fired.

B. Second, in the Separation Agreement, to "resolve any disputes and disagreements between the parties . . . Employee . . . sells . . . to the Company 100% of the Interest . . . *up to* $250,000" via payments over 3 years, conditioned on "strict compliance" with Agreement terms and "any breach shall result in forfeiture of any unpaid amounts of the Maximum Price." **(Id.)**

42. The terms of the unexecuted Operating Agreement dated May 1, 2006 **(Ex. 6),** an unexecuted Equity Agreement with an attached promissory note, dated January 1, 2008 **(Ex. 7)** and the Separation Agreement **(Ex. 5)** were subjective, illusory and unconscionable. Moreover, another disclosed document, an unexecuted Profits Interest Award Agreement with an attached promissory note, dated January 1, 2009 **(Ex. 8)**, suggests the Equity Agreement and promissory note **(Ex. 7)** were never executed.

43. The Separation Agreement did not provide a required assessment of the value of Elizondo's ownership interest pursuant to the alleged Operating Agreement **(Ex. 6, p. 17, 13.1)**. No such calculation has ever been disclosed by Open Sky.

44. On or about April 7, 2022, Open Sky mailed a letter to Elizondo (while he was out of town) offering him his 2020 profit sharing allocation of $82,106. However, Open Sky also once again attempted to—apparently alternatively—"redeem" Elizondo's "equity interest" for $250,000 (without any interest from the November 2020 offer), again without any calculation how the number was determined. The offer sought an acceptance by April 15, 2022, while Elizondo remained out of town. **(Ex. 9).**

45. The April 7, 2022 Open Sky offer **(Ex. 9)** stated $53,850 would be deducted from the $250,000 offer because of a Promissory Note of $30,000 plus $23,850 interest allegedly owed from Elizondo's "equity interest," again without any supporting documentation. **(Id.).**

46. Upon information and belief, Elizondo did not execute any Promissory Note.

47. Elizondo has repeatedly requested the fully executed agreements between the parties. None have been produced. Defendants admitted none of the documents were signed.

48. Moreover, the Separation Agreement **(Ex. 5)** at page 1, Terms, ¶ 2 indicate "in exchange for Employee's *services*, Employee was assigned an ownership of approximately 3% of the Company's outstanding profits interests." Accordingly, Elizondo *earned* the ownership interest from his sweat equity rather than from a loan via a promissory note.

49. Upon information and belief, because none of the alleged agreements were executed, Defendants have been attempting to convert Elizondo's ownership interest in Open Sky to Defendants. Moreover, Defendants seek to deprive Mr. Elizondo of $53,850 as interest on a promissory note that was never executed.

50. Defendants failure to timely pay Elizondo's profit sharing when earned, and converting such profits to themselves, constitutes theft under C.R.S. §18-4-405.

51. Defendants failure to timely pay Elizondo ownership profits, such funds were used for Defendants own purposes, which also constitutes civil theft.

52. Defendants converted Elizondo's ownership profits to themselves by deception with the intent to deprive Elizondo of the use of such profits.

53. Pursuant to C.R.S. §18-4-405, Elizondo is entitled to mandatory treble damages from Defendants for failing to timely pay Elizondo's annual profit sharing for 2020 and 2021, and using those funds for their own purposes, as well as reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Defendants Failure to Engage in Good Faith and Fair Dealing)

54. Elizondo incorporates by reference each allegation stated above.

55.  Elizondo was granted a 3% ownership interest of Open Sky in exchange for his services, for which his compensation was reduced during the beginning of his employment with Open Sky.

56. None of the alleged equity agreements referred to above were made in good faith and fair dealing.

57. The unexecuted Separation Agreement **(Ex. 5),** as well as the April 7, 2022 offer **(Ex. 9)** attempting to "redeem" Elizondo's ownership agreement for $250,000 (the latter of which to be discounted by $53,850 for an undocumented promissory note) were not made in good faith and fair dealing.

58. Other unfair provisions in the Separation Agreement with buyout provisions also included excessively overbroad terms for "confidentiality," "intellectual property" and "non-disparagement" provisions for which there is little if any trade secrets in wilderness therapy. The terms also included overly broad non-compete provisions covering two years in seven states. No such agreements were entered into prior to Elizondo's termination.

WHEREFORE, Elizondo respectfully requests the Court enter judgment in his favor and against Defendants as follows:

A. All damages to the greatest extent of the law, including punitive damages, for religious discrimination that was intentional or made with malice or reckless indifference to Elizondo's rights;

B. All damages to the greatest extent of the law, including punitive damages, for disability discrimination that was intentional or made with malice or reckless indifference to Elizondo's rights;

C. Damages for breach of contract for failing to timely pay Elizondo for his 2020 and 2021 profit sharing interests;

D. Treble damages under civil theft claim for 1) untimely payment of Elizondo's 2020 and 2021 Open Sky profit sharing compensation; and 2) converting or attempting to convert Elizondo's future ownership interests to Defendants.

E. For damages for the full value of Elizondo's ownership interest;

F. Reasonable attorneys' fees, costs and interest to the greatest extend of the law under Title VII and the Rights to Stolen Property statutes;

G. Pre-judgment and post-judgment interest to the greatest extent allowable by law; and

H. All other or further relief allowable by law as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Fed. R. Civ. P, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: January 31, 2023


Norman Elizondo
180 Metz Lane, #1304
Durango, CO 81301
970-759-5526
indirascoville@gmail.com